# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| SANFORD JACKSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case Number: 1:17-cv-01271-JHE ) |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION[1]

Plaintiff Sanford Jackson ("Jackson") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). (Doc. 1). Jackson timely pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

Jackson filed his application for a period of disability, DIB, and SSI on October 27, 2014, alleging he became unable to work beginning August 29, 2014. (Tr. 125-37). The claims were initially denied on February 5, 2015. (Tr. 74-78). Jackson requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 81-82). Jackson appeared and testified at a hearing held

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 12).

on July 11, 2016, in Anniston, Alabama. (Tr. 33-53). After the hearing, the ALJ denied Jackson's claim by decision issued on August 26, 2016. (Tr. 21-29). Jackson sought review by the Appeals Council, but it declined his request on June 1, 2017. (Tr. 1-6). On that date, the ALJ's decision became the final decision of the Commissioner. On July 28, 2017, Jackson initiated this action. (*See* doc. 1).

Jackson was fifty-eight-years-old at the time of the ALJ's decision. (Tr. 148). Jackson has a high school education and past relevant work as a groundskeeper, conveyor off-bearer, pourer of metal, grinder, and hand painter. (Tr. 28, 48-49). Jackson has alleged he is disabled based on "slipped disc in lower back" and "pain in hips, knees, and chest." (Tr. 152).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. "Substantial evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). However, the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

    (1)    whether the claimant is currently employed;
    (2)    whether the claimant has a severe impairment;
    (3)    whether the claimant's impairment meets or equals an impairment listed

---
[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

3

>     by the [Commissioner];
> (4) whether the claimant can perform his or her past work; and
> (5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Jackson meets the insured status requirements of the Social Security Act through December 31, 2018, and that Jackson had not engaged in substantial gainful activity from his alleged onset date of August 29, 2014. (Tr. 24). At Step Two, the ALJ found Jackson has the following severe impairments: disc degeneration of the lumbar spine and leg spasms. (Tr. 24-25). At Step Three, the ALJ found Jackson did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 25).

Before proceeding to Step Four, the ALJ determined Jackson's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that Jackson had the RFC to perform medium work as

defined in 20 C.F.R. 404.1567(c) and 416.967(c), which allows for occasional stooping and crouching and no work around unprotected heights. (Tr. 26-28).

At Step Four, the ALJ determined, Jackson is capable of performing past relevant work as a conveyer-off bearer, grinder, and hand painter. (Tr. 28). Therefore, there was no need to proceed to the remaining steps of the sequential evaluation process, and the ALJ concluded Jackson had not been under a disability as defined in the Social Security Act. (Tr. 28-29).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Jackson contends the ALJ failed to properly evaluate the "credibility" of his complaints of pain consistent with the Eleventh Circuit Pain Standard. (Doc. 10 at 4-10). However, substantial evidence supports the ALJ's determination Jackson failed to demonstrate a disability, and the ALJ applied the proper standards to reach this conclusion.

### A. The ALJ's Evaluation of Jackson's Subjective Complaints and the Eleventh Circuit Pain Standard

When a claimant alleges disability based on complaints of pain or other symptoms, he must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of his alleged symptoms or evidence establishing that his medical condition could be reasonably expected to give rise to his alleged symptoms. *See* 20 C.F.R. §§

5

404.1529, 416.929; *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes he has an impairment that could reasonably be expected to produce his alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effects on the claimant's ability to work. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002). If he or she does not fully credit the claimant's subjective pain testimony, the ALJ's decision must articulate his or her reasons and those reasons must be supported by substantial evidence. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).

Social Security Ruling ("SSR") 16-3p, effective March 28, 2016, eliminates the use of the term "credibility" as it relates to assessing the claimant's complaints of pain and clarifies that the ALJ "will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file." SSR 16-3p, 2016 WL 1119029, *7 (March 16, 2016). SSR 16-3p further explains that the ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent review can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2016 WL 1119029, *9.

Jackson points to several specific alleged errors in the ALJ's decision, contending the ALJ "mischaracterized" the record evidence upon which he relied, relied on "isolated notations in the record" instead of considering the medical record as a whole, did not properly consider that Jackson needed rest to relieve his pain, and insufficiently articulated his reasons for according Dr. Ammar S. Aldaher's opinion significant weight. (Doc. 10 at 6-10). Each will be addressed in

6

turn.

### 1. The ALJ Did Not Mischaracterize the Evidence and Properly Relied on the Record as a Whole

As to Jackson's arguments that the ALJ "mischaracterized" evidence and relied on "isolated notations," the ALJ's decision shows that the ALJ discussed nearly all of the evidence Jackson cites. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"). Jackson points to the record evidencing his complaints of pain, physical examination findings showing musculoskeletal tenderness, spasms, and moderate lumbar pain with range of motion; prescriptions for medications (including an increase in Jackson's Neurontin dosage), diagnosis of recurrent back pain with radiation and lumbago with sciatica, a lumbar x-ray, and a referral for an orthopedic consultation. (Doc. 10 at 6-7). Notwithstanding Jackson's contentions, the ALJ cited and considered this evidence. Specifically, the ALJ noted complaints of pain in January 2014 and January 2015; complaints of tenderness and spasm in the lower back with radiation into his legs and feet at a February 18, 2015 appointment, which were confirmed upon examination; treatment with Mobic, Baclofen, and Neurotin; an x-ray that revealed straightening of the lumbar lordosis and posterior arthopathy at L3 and L5, with disc disease at L5; as well as an assessment of lumbago with sciatic. (Tr. 24-25). There is no mischaracterization in the ALJ's presentation of this evidence.

As to Jackson's assertion that the ALJ relied on "isolated notations," a review of the record demonstrates the ALJ relied on the record as a whole. The ALJ considered the March 2015 lumbar x-ray, which showed straightening of the lumbar lordosis and posterior arthopathy at L3 and L5, with disc disease at L5, along with Dr. Aldaher's January 2015 findings Jackson's back was without spasm or deformity along with having normal range of motion; that his gait was normal

with no ataxia or spasticity. (Tr. 25, 27). Treatment notes consistently show Jackson's extremities were without abnormalities, he had no difficultly with ambulation and normal gait, and he only required conservative treatment with prescription medication. (Tr. 214-15, 220-21, 229). Treatment notes further show that in October 2015, Jackson reported that his pain was relieved by medication and rest (tr. 217), and that in March 2016, Jackson reported his pain was "intermittent" and "better" (tr. 228).

> **2. There is No Error in the ALJ's Consideration of the fact Jackson's Pain was Relieved by "Medication and Rest" and that His Neurontin Dosage was Increased Once.**

Jackson further argues the ALJ did not properly consider that he reported *both* medication and rest relieved his pain. (Doc. 10 at 8). The treatment note at issue states that "[s]ymptoms are relieved by pain meds/drugs and rest" (tr. 217), and the ALJ stated "[Jackson] also reported that pain medications and rest relieved his symptoms." (Tr. 25). It is unclear how Jackson contends the ALJ did not properly account for the rest aspect of this evidence, other than his argument that the ALJ should have concluded that he needed rest along with pain medicine. However, as an initial matter, the treatment note can be read in more than one way. Is Jackson's pain relieved by the combination of medication and rest? Or, should it be read in the disjunctive, that either medication or rest relieves his pain? Is it some combination thereof? It is not clear from the note itself, and the ALJ's reading and application is reasonable. Notably, although Jackson's doctors prescribed medications for pain relief (tr. 215, 220-21, 229), there is nothing in the record to show that any of his doctors prescribed rest to relieve his pain. To the contrary, as the Commissioner points out, one of Jackson's treating physicians, Dr. Stacy Towles-Moore, advised Jackson to walk daily as treatment for his back condition. (Tr. 229). Furthermore, Jackson fails to articulate the amount of rest he would need to relieve his pain and how that would prevent him from being able

to work.

Jackson also points to the increase in dosage of his Neurontin prescription from 100 mg three times a day to 300 mg twice a day at his March 2016 appointment as evidence that his pain must not have been controlled. (Doc. 10 at 8). This is not the only conclusion that can reasonably be drawn from the evidence, and it was proper for the ALJ not to draw this conclusion. At the same appointment that Jackson's Neurontin dosage was increased, Dr. Towles-Moore noted that rest, prescription medication, and heat are relieving factors and that his pain "comes and goes," is "not any worse," and that "it is better." (Tr. 228). Additionally, Dr. Towles-Moore prescribed daily walking. (*Id.*). This adjustment in one of Jackson's medications does not necessitate the conclusion that Jackson's pain was not controlled as he now argues.

### 3. The ALJ Properly Accorded Dr. Aldaher's Opinion Significant Weight

Finally, Jackson's contention that the ALJ did not properly explain why he accorded significant weight to Dr. Aldaher's February 2015 examination findings/opinion and that Dr. Aldaher's opinion is "vague" (doc. 10 at 10) is belied by the record. Dr. Aldaher performed a physical consultative examination on January 28, 2015.[4] (Tr. 24, 208-09). As the ALJ reported, Dr. Aldaher's notes reveal that Jackson denied radiation, paresthesias, numbness, and muscle weakness. (Tr. 208). Dr. Aldaher's examination revealed Jackson's back had no spasm or deformity; his lumbosacral area and upper and lower extremities had normal range of motion with no abnormalities; his gait was normal; and he had no ataxia, muscle weakness, atrophy, or spasticity. (*Id.*). Based on these findings, Dr. Aldaher opined that he believed Jackson was able to do work related activities such as sitting, standing, walking, lifting, carrying, and handling

---

[4] Notably, Jackson does not allege the ALJ relied on Dr. Aldaher's opinion over a treating physician's opinion (and the ALJ did not). Therefore, no particular significance should be placed on the fact Dr. Aldaher is a non-treating physician.

objects and that his hearing and speaking were intact. (Tr. 209). Dr. Aldher's assessment and opinion are certainly not vague. Furthermore, the ALJ's explains why he accords them significant weight. (Tr. 24, 28). Specifically, after outlining Dr. Aldaher's findings (tr. 24), the ALJ explains that he is according those findings and opinions significant weight because they are consistent with the medical evidence as a whole and with Jackson's RFC. (Tr. 28).

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Jackson's claim for a period of disability, disability insurance benefits, and supplemental security income is **AFFIRMED**, and this action **DISMISSED WITH PREJUDICE.**

DONE this 17th day of September, 2018.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE